IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Janie McNeil,                          :
                 Petitioner            :
                                       :   No. 2022 C.D. 2016
            v.                         :
                                       :   Submitted: April 21, 2017
Workers' Compensation Appeal           :
Board (Department of Corrections,      :
SCI-Graterford),                       :
                 Respondent            :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JOSEPH M. COSGROVE, Judge


OPINION BY
JUDGE McCULLOUGH                              FILED:  September 1, 2017


         Janie McNeil (Claimant) petitions for review of the November 17,
2016 order of the Workers' Compensation Appeal Board (Board) affirming a
decision of the Workers' Compensation Judge (WCJ) dismissing Claimant's
reinstatement petition against the Department of Corrections, State Correctional
Institution (SCI)-Graterford (Employer).


**Facts and Procedural History**

         While working as a gate sergeant for Employer on January 26, 2011,
Claimant slipped and fell while trying to enter a truck at the front gate of
Employer's premises and suffered injuries to her left ankle and left shoulder.
Claimant filed a claim petition on February 15, 2011.  As this petition was
pending, Employer issued a notice of compensation payable (NCP) on March 7,

2011, acknowledging that Claimant sustained work-related injuries in the nature of a left ankle sprain and left shoulder sprain. On August 3, 2011, Employer issued an amended/corrected NCP which acknowledged an additional injury in the nature of a low back strain. (Reproduced Record (R.R.) at 6; Claimant's brief at 6.) By decision and order circulated July 10, 2013, the WCJ granted Claimant's claim petition with respect to the following injuries: "left ankle sprain, acute cervical strain, acute back pain, musculoskeletal injury of the left shoulder, mild edema of the left ankle, left shoulder sprain, and tenderness of the Claimant's left shoulder and upper and lower back." (R.R. at 7.) Employer did not appeal.

On August 15, 2013, Employer filed a termination petition, alleging that Claimant had fully recovered from her work-related injuries. This petition was premised upon the decision of an arbitrator under the Heart and Lung Act,[1] which found Claimant to be fully recovered. Employer also relied on the results of an independent medical examination of Claimant conducted on May 21, 2014, by John Donahue, M.D., who similarly opined that Claimant had fully recovered from her work injuries as of the date of the examination. (R.R. at 8.) Claimant filed a timely answer denying all material allegations.

In the meantime, on February 25, 2014, Claimant filed a petition to review benefits, alleging an incorrect description of the work injury, and a penalties petition, alleging that Employer violated the Workers' Compensation Act[2] and/or its regulations. Employer filed a timely answer denying all material allegations of Claimant's petitions. (R.R. at 6.) Claimant's petitions were

---

[1] Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§637-638.

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

2

consolidated with the termination petition for purposes of hearings and disposition. (R.R. at 3-21.)  The final hearing was held on September 29, 2014.  (R.R. at 5.)

On July 18, 2014, Claimant had her first office visit with Andrew Kuntz, M.D. (Dr. Kuntz), a staff surgeon in the department of orthopedic surgery at the Department of Veterans Affairs Medical Center in Philadelphia.  Although Dr. Kuntz's examination occurred prior to the close of the record in the aforementioned proceeding, Claimant did not depose Dr. Kuntz or offer any evidence relating to his examination.

On August 7, 2014, Claimant underwent an MRI of her left shoulder, which indicated a partial tendon tear along with degenerative changes.  (R.R. at 54.)  However, the MRI results were not introduced into evidence in the aforementioned proceeding.

Dr. Kuntz performed arthroscopic surgery on Claimant's left shoulder on December 30, 2014.  During the surgery, Dr. Kuntz found "a partial articular sided tear of the supraspinatous tendon that was debrided, but did not need repair. Additionally, there was evidence of intra-articular biceps tendon fraying and tearing in conjunction with a type I SLAP tear." (R.R. at 55.)  Dr. Kuntz performed a soft tissue biceps tenodesis and some additional debridement to treat both of these lesions.  (R.R. at 55.)  Although the record in the aforementioned proceeding was closed at the time of the surgery, the WCJ had not yet rendered a decision, and Claimant did not seek to re-open the record.

By decision and order circulated on February 2, 2015, the WCJ determined:  (1) the prior arbitrator's decision in the proceeding under the Heart and Lung Act did not preclude her from reaching the merits of Claimant's review petition or Employer's termination petition; (2) the termination of Claimant's workers' compensation benefits was appropriate as of May 21, 2014, the date of

3

the examination by Dr. Donahue; (3) Claimant's penalties petition was denied; (4) Claimant's review petition was granted to the extent it sought to further add thoracic and lumbar strain and sprain as a work-related work injury; (5) Employer's contest of the review and penalties petitions was reasonable; and, (6) the testimony of Dr. Donahue was credible. The Claimant's review petition was denied insofar as it sought to add, *inter alia*, a left shoulder rotator cuff tear to the work-related injury. (R.R. at 13, 15-18.)

Both parties appealed the WCJ's decision. In an opinion and order circulated on December 30, 2015, the Board affirmed the WCJ. (R.R. at 41-51.) Neither party appealed this decision of the Board.

Meanwhile, Claimant had follow-up office visits with Dr. Kuntz on February 13, April 10, and July 10, 2015. Dr. Kuntz issued a report to Claimant's counsel on September 3, 2015 (the Kuntz report), finding that "based on Ms. McNeil's report of a fall from a truck that resulted in shoulder pain, it is [his] opinion that, within a reasonable degree of medical certainty[,] her left shoulder pain resulted from that injury." (R.R. at 55.)

On November 18, 2015, Claimant filed a reinstatement petition, seeking a reinstatement of her benefits as of December 30, 2014, the date of the arthroscopic surgery. Employer filed a timely answer denying all material allegations.

The sole hearing to consider the reinstatement petition occurred before the WCJ on December 10, 2015. Although counsel for Claimant and counsel for Employer were present at the hearing, no testimony was taken. The only evidence offered by either party was the decision of the WCJ in the prior proceeding. There is no evidence that either Claimant or Employer was present with their counsel. (R.R. at 56-68.)

4

At this hearing, Employer moved to dismiss the reinstatement petition because "right now as of record, she has no rotator cuff tear related to the work injury, and two there are very [expensive] appeal [*sic*] pending with the Appeal Board." (R.R. at 62.) The WCJ set a briefing schedule and made it clear that "[I]f I grant the motion to dismiss, you're going to appeal it. If I deny the motion to dismiss, I'll bring this back for a pre-trial [hearing] and set it up for a trial date." (R.R. at 64.) Claimant's counsel represented that he was in possession of the Kuntz report, (R.R. at 66), and the following exchange took place among counsel and the WCJ:

> [Employer's counsel]: Your Honor, just to clarify on the records, it is the surgery for the rotator cuff tear in December of 2014 that you're claiming is the worsening injury?
>
> [Claimant's counsel]: Yes, absolutely.

(R.R. at 65.)

The record indicates that Claimant's brief in response to Employer's motion to dismiss was electronically filed with the WCJ on February 18, 2016, and was also mailed to the WCJ. (R.R. at 1.) Claimant's counsel represents that the Kuntz report was attached to that brief. (Claimant's brief at 7-8.) Employer's counsel admits that the Kuntz report was attached to Claimant's brief, but argues that it was properly disregarded by the WCJ "because it had not been produced to Employer or submitted into evidence prior to the submission" of that brief. (Employer's brief at 15.)

The WCJ dismissed Claimant's reinstatement petition in a decision and order circulated on February 29, 2016. The WCJ found, in pertinent part:

> The Judge has reviewed the arguments of the parties and finds that a surgery for a rotator cuff tear in

5

December of 2014 was the basis of the worsening of condition allegation in this case . . . . The Judge's review of [the prior WCJ's] decision of February 2, 2015, finds that the left rotator cuff injury alleged by the Claimant was determined not to be related to the Claimant's employment incident of January 26, 2011.

(WCJ's Findings of Fact Nos. 13-14.)

Neither the WCJ's decision nor the list of exhibits referenced the Kuntz report. Furthermore, neither the WCJ's findings of fact, nor her conclusions of law referenced the aforementioned dialogue between counsel at the December 10 hearing.

Claimant appealed to the Board, which affirmed the WCJ's decision, holding: (1) Employer's motion to dismiss was made *after* the dialogue of counsel;[3] (2) Claimant bore a heavy burden when seeking reinstatement following a termination of benefits; (3) Claimant's attempt to include the left rotator cuff tear as a work-related injury was barred by the doctrine of collateral estoppel; and (4) even if a worsening had occurred in December of 2014, as Claimant contended, "she [did] not establish[] [that] her condition [] changed since the prior termination proceeding and thus, [was] not be entitled to a reinstatement of benefits." (Board op. at 3-4). The Board also noted that Dr. Kuntz's "report was not part of the record before the [WCJ], and thus, [it could not] consider it." (Board op. at 4, n.1).

Claimant appealed the Board's decision to this Court,[4] arguing that

---

[3] The Board is incorrect. Employer moved to dismiss Claimant's reinstatement petition *prior to* the dialogue in question. (R.R. at 61-66.)

[4] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006). The scope of review on questions of law is plenary and the
**(Footnote continued on next page…)**

6

the Board erred in: (1) failing to consider the report of Dr. Kuntz as part of the record; (2) holding that Claimant did not meet her burden of establishing a causal connection between her current condition and the work injury; and (3) holding that the worsening of Claimant's condition occurred prior to the termination of benefits.

### Claimant's Burden of Establishing a Causal Connection

The Court will first consider Claimant's argument that the Board erred in holding that she did not meet her burden of establishing a causal connection between her current condition and the work injury.

To reinstate benefits after termination, a claimant must establish "a causal connection between [her] current condition and the prior work-related injury." *Pieper v. Ametek-Thermox Instruments Div.*, 584 A.2d 301, 304 (Pa. 1990) (internal citations omitted); *see also Huynh v. Workers' Compensation Appeal Board (Hatfield Quality Meats)*, 924 A.2d 717, 722 (Pa. Cmwlth. 2007). To establish this causal connection, a claimant must demonstrate that her "disability has increased or recurred after the date of the prior award, and that [her] physical condition has actually changed in some manner." *Pieper*, 584 A.2d at 304.

In this case, Claimant alleges that her worsened condition resulted from arthroscopic rotator cuff surgery occurring on December 30, 2014. In response, Employer argues that the rotator cuff injury was already excluded from

_____

**(continued…)**

standard of review is *de novo*. *Pitt Ohio Express v. Workers' Compensation Appeal Board (Wolff)*, 912 A.2d 206, 207 (Pa. 2006).

7

the nature of Claimant's work-related injury and that the doctrine of collateral estoppel applies to prevent the Claimant from re-litigating that issue at this time. This Court agrees.

The WCJ opinion circulated on February 2, 2015, considered the testimony of Dennis Ivill, M.D. (Dr. Ivill), as presented by Claimant, as well as the testimony of Dr. Donahue, as presented by Employer. With respect to the purported rotator cuff tear, the WCJ found Dr. Donahue's testimony to be more "credible and persuasive" than that of Dr. Ivill because Dr. Donahue "gave specific reasons for the lack of existence of . . . [a] left shoulder rotator cuff tear." (R.R. at 7.) Additionally, Dr. Ivill did not "delineate any specific clinical findings and reasons in support of [that] diagnos[is] as [an] alleged result[] of the work injury." *Id.* The WCJ's denial of Claimant's review petition seeking to add an injury in the nature of a left rotator cuff tear was affirmed by the Board. Notably, Claimant did not appeal the Board's decision. At the hearing before the WCJ to consider Claimant's reinstatement petition, neither Claimant nor Employer presented any additional evidence or testimony.

This Court addressed a similar situation in *Williams v. Workers' Compensation Appeal Board (South Hills Health Systems)*, 877 A.2d 531 (Pa. Cmwlth. 2005). In *Williams*, the employer filed a termination petition. In granting the termination petition, the WCJ found that the claimant's disc bulge was not a work-related injury, and the claimant did not appeal that decision. The claimant then filed a reinstatement petition, premised upon a worsening of her condition related to the disc bulge. The WCJ granted the reinstatement petition, finding that the claimant met her burden in demonstrating that her back condition had worsened as a result of the work-related injury. On appeal, the Board reversed the decision of the WCJ, reasoning that the WCJ's decision with respect to the

8

termination petition, now a final order, specifically excluded the disc bulge from the work-related injury. This Court concluded that the claimant was collaterally estopped from re-litigating the question of whether her disc bulge was caused by the work-related injury, and stated that the claimant's remedy would have been to appeal the WCJ's grant of the termination petition. Accordingly, the Court affirmed the decision of the Board.

The present case is indistinguishable. Here, in granting Employer's termination petition, the WCJ found that Claimant's left rotator cuff tear was excluded from the work-related injury. Claimant appealed to the Board, which ultimately affirmed the decision of the WCJ. Claimant did not appeal the Board's decision; thus, it became a final order as to the scope of the work-related injury. Similar to the claimant in *Williams*, Claimant then filed a reinstatement petition, again raising the issue of whether the left rotator cuff tear was a result of the work-related injury. That question was previously determined in the context of the termination petition. Therefore, Claimant is collaterally estopped from re-litigating that fact in this proceeding.

Even if not collaterally estopped, Claimant's attempt to prove that her condition worsened after the termination of her benefits is belied by her counsel's own statements at the hearing on the reinstatement petition. At the beginning of the December 10, 2015 hearing before the WCJ, counsel explained that Claimant's reinstatement petition was "based on a surgery that was done in December of 2014" and that Claimant's "condition has obviously worsened because of that, and that's the basis for the [r]einstatement [p]etition." (R.R. at 60.)

Later, at the same hearing, a colloquy among counsel and the WCJ included the following exchange:

9

[Employer's counsel:] Your Honor, just to clarify on the records, it is the surgery for the rotator cuff tear in December of 2014 that you're claiming is the worsening injury?

[Claimant's counsel:] Yes, absolutely.

[Employer's counsel:] Okay.

[WCJ:] Relist, I just have to make a note to myself for my secretary.

(R.R. at 65-66.)

The WCJ relied in part on the statement by Claimant's counsel in finding that the "surgery for a rotator cuff tear in December of 2014 was the basis of the worsening of condition allegation in this case." (R.R. at 26.) On appeal, the Board characterized the statement of Claimant's counsel as an acknowledgment which led to the request by Employer's counsel for dismissal of the reinstatement petition. (R.R. at 31-32.) Employer again references this exchange in its brief submitted to this Court, arguing that "it is eminently clear from the record that [the WCJ] based his decision on the statement made by Claimant's counsel." (Employer's brief at 11-12.) Employer cites this Court's decision in *Piper Aircraft Corporation v. Workmen's Compensation Appeal Board (Bibey)*, 485 A.2d 906 (Pa. Cmwlth. 1985), to argue that the statement made by Claimant's counsel at the WCJ hearing is binding on Claimant. (Employer's brief at 11.)

In *Piper Aircraft*, this Court held that "an admission of an attorney during the course of a trial [was] binding upon his client." 485 A.2d at 908-09 (citing *Eldridge v. Melcher*, 313 A.2d 750 (Pa. Super. 1973)). The Superior Court's decision in *Eldridge* explained that a "client may be bound by the acts or statements of his attorney, when made within the scope of his authority." 313 A.2d at 755. However, the Court held that counsel had no authority to bind his client

10

through a statement "made out of court and not in the presence of the client" without affirmative proof that the client gave his counsel authority to make the admission, knew the admission would be made, or assented to the admission. *Eldridge*, 313 A.2d at 755; *see also Mahler v. Singer*, 285 Pa. 540, 545 (1926).

In the present case, the statement of Claimant's counsel was made on the record during hearing on the reinstatement petition. Although Claimant was not present at the hearing, counsel appeared at the hearing on her behalf and within the scope of his authority. Therefore, the statement of Claimant's counsel was binding on Claimant, and the Board did not err in relying upon that statement in affirming the WCJ.

## Report of Dr. Kuntz

Next, Claimant argues that the Board erred in failing to consider the Kuntz report as part of the record. Although Employer admits that the Kuntz report was attached to Claimant's brief filed with the WCJ, it argues that the report was not properly admitted into evidence. (Employer's brief at 15.) The Board agreed with that argument, citing *Kimberly Clark Corp. v. Workers' Compensation Appeal Board (Bullard)*, 790 A.2d 1072 (Pa. Cmwlth. 2001), to explain that the "report was not part of the record before the [WCJ] and thus, [the Board could not] consider it."[5] (Board op. at 4 n.1.)

---

[5] In *Kimberly Clark Corp.*, this Court held that "items which are not part of the record may not be considered by the fact-finding tribunal, or the appellate body on review." *Kimberly Clark Corp.*, 790 A.2d at 1075-76 (citations omitted). It further explained that evidence cannot be considered part of a party's case-in-chief if it was not "offered and admitted as an exhibit during on-the-record proceedings." *Id.* at 1075.

11

This Court finds that the Board did not err by declining to consider the Kuntz report because it was not part of the record. Relevant to this determination are sections 131.52 and 131.61 of the Special Rules of Administrative Practice and Procedure Before Workers' Compensation Judges (Special Rules), 34 Pa. Code §§131.52 and 131.61. Section 131.52 provides, in pertinent part:

> (a) When practicable and appropriate, the entire record relating to any petition shall be completed at the initial hearing . . . .
>
> . . .
>
> (c) The moving party, at the first hearing, shall advise the judge and opposing parties of the following: . . . (5) Whether the items and information specified in § 131.61(a) (relating to exchange of information), which are intended to be used as evidence or exhibits, have been provided to the responding party at or before the first hearing.
>
> (d) The moving party, at the first hearing, unless otherwise directed by the judge, shall offer and have marked for identification available exhibits of the moving party.
>
> . . .
>
> (f) Evidence furnished under this section does not become part of the record, unless otherwise admissible.

34 Pa. Code §131.52. In turn, section 131.61, which governs the exchange of information, provides:

> (a) Parties shall exchange all items and information, including . . . reports . . . to be used in or obtained for the purpose of prosecuting or defending a case, unless the

12

foregoing are otherwise privileged or unavailable, whether or not intended to be used as evidence or exhibits.

(b) The moving party shall provide the items and information referred to in subsection (a) to the responding party prior to the commencement of the first pretrial hearing or hearing actually held. The responding party shall provide the items and information referred to in subsection (a) to the moving party no later than 45 days after the first pretrial hearing or hearing actually held.

. . .

(e) Statements, documents or other records required to be provided by this chapter, if not provided within the time periods in this chapter or modified under § 131.12 (relating to modification of time), will not be admitted, relied upon or utilized in the proceedings or judge's rulings, as appropriate.

34 Pa. Code §131.61.

Based upon their plain language, it is apparent that Claimant, the moving party with respect to the reinstatement petition, did not satisfy the requirements of sections 131.52 and 131.61 of the Special Rules. Specifically, there is no evidence to suggest that Claimant provided the Kuntz report to Employer prior to the commencement of the hearing before the WCJ. Notably, Claimant does not argue that the Kuntz report was properly exchanged with, and provided to, Employer pursuant to the Special Rules. Instead, Claimant contends that the Kuntz report was submitted to the WCJ on February 18, 2016, and uploaded to the WCAIS[6] on that same day. Merely attaching the Kuntz report to a

---

[6] The WCAIS is the Workers' Compensation Automation and Integration System of the Pennsylvania Department of Labor and Industry.

13

brief does not satisfy the requirement of section 131.61(b) that all items to be used in the prosecution of a case are to be provided to the responding party prior to the commencement of the first hearing actually held. Although Claimant's counsel referred to the Kuntz report at the sole hearing before the WCJ, (R.R. at 66), Claimant's counsel did not offer the Kuntz report to be marked for identification before the WCJ, nor did he advise the Board whether the Kuntz report had been provided to Employer. *See* 34 Pa. Code §131.52. Because there is nothing in the record to indicate that Claimant complied with the Special Rules with respect to the Kuntz report, this Court cannot determine that the WCJ, and later the Board, erred in failing to consider the Kuntz report in their decisions.

### Date of Termination

Finally, Claimant argues that the Board erred in holding that the worsening of Claimant's condition occurred prior to the previous termination of benefits. "A claimant seeking reinstatement of benefits following a termination carries a heavy burden because the claimant has been adjudicated to be fully recovered." *National Fiberstock Corp. (Greater New York Mut. Ins. Co.) v. Workers' Compensation Appeal Board (Grahl)*, 955 A.2d 1057, 1062 (Pa. Cmwlth. 2008); *see also Taylor v. Workers' Compensation Appeal Board (Servistar Corp.)*, 883 A.2d 710, 713 (Pa. Cmwlth. 2005) (finding that a termination order effectively establishes that a claimant has fully recovered from the work-related injury).

In the present case, Claimant's benefits were terminated as of May 21, 2014, pursuant to the WCJ's February 2, 2015 opinion, and affirmed by the Board on December 30, 2015. Claimant filed her reinstatement petition on November 18, 2015, asserting a worsened condition resulting from her December 30, 2014, surgery to repair her left rotator cuff tear.

14

While it is true that the surgery occurred after Claimant was deemed to have fully recovered from her work-related injury, it occurred one month prior to issuance of the WCJ's decision in the termination/review/penalty proceeding. In the WCJ's February 2, 2015 opinion, the rotator cuff injury was deemed to be excluded as a work-related injury. Therefore, any worsened condition that occurred after May 21, 2014, as a result of the rotator cuff tear was irrelevant to the consideration of whether Claimant is entitled to the reinstatement of her benefits.

## Conclusion

Because Claimant failed to establish a causal connection between her current condition and her recognized work-related injuries, failed to comply with the Special Rules relating to the admissibility of the Kuntz report, and failed to establish a worsening of her condition subsequent to the termination of her benefits, the Board did not err in affirming the WCJ's decision dismissing Claimant's reinstatement petition. Accordingly, the order of the Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Cosgrove dissents.

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Janie McNeil,                                   :
                    Petitioner                  :
                                                :     No. 2022 C.D. 2016
          v.                                    :
                                                :
Workers' Compensation Appeal                    :
Board (Department of Corrections,               :
SCI-Graterford),                                :
                    Respondent                  :

## ***ORDER***

AND NOW, this 1st day of September, 2017, the order of the Workers' Compensation Appeal Board dated November 17, 2016, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge